Brady, J.
Plaintiff Maria Santiago (Santiago), through her mother and next friend Anna Santiago, seeks to recover for injuries sustained in a skiing accident at the Blue Hills Ski Area in Canton, Massachusetts, which is owned and operated by defendant Recreational Sports, Inc. (RSI). RSI now seeks sum *289 mary judgment on all claims against it, on the ground that the claims are barred by the Massachusetts “Ski Safety Act,” G.L.c. 143, §§71H-71S. For the following reasons, RSI’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
The undisputed facts are derived from the summary judgment record. On January 30, 1994, Santiago was injured while skiing down the “Trophy” ski slope at the Blue Hills Ski Area (Blue Hills), when she struck an orange, webbed snow fence that ran along the side of the slope and separated it from a wooded area, then struck a tree behind the fence. She was a novice skier and 13 years old at the time.
Santiago had been to Blue Hills with a friend one week before her accident. She had purchased a ski package that included the cost of a lesson from a ski instructor employed by RSI, equipment rental and a half-day ski pass. RSI did not request parental permission. At the end of the lesson, the instructor told Santiago that she should practice only on the “bunny slope,” and she followed this advice. On January 30, 1994, Santiago and a friend returned to Blue Hills and again purchased a ski package that included a lesson, equipment and a half-day pass. Again, RSI did not request parental permission. Next, according to Santiago, the RSI employee at the ski rental facility did not adjust the bindings on her skis. Further, Anna Santiago avers that she was “unaware that Blue Hills would give her a pass to ski any of the trails unsupervised after her lesson,” and had she known, she “would not have let [her] daughter ski after her lesson was over.”
During the lesson, the ski instructor praised Santiago’s progress and said that she was doing well. At the end of this lesson, the instructor did not warn her or restrict her to any particular slope. Santiago interpreted this to mean that she was sufficiently skilled to practice on an intermediate slope. Santiago left the ski instruction area, skied to a lift, and proceeded down the ‘Trophy” ski trail. The parties dispute whether or not the trail was marked with signs identifying its name, location or difficulty level, although the court does not consider this to be a material fact for purposes of this motion. Santiago completed her first run without incident. On her second run on the same trail, Santiago failed to make the turn at the bottom of the “Trophy” trail and struck the snow fence, which caused her to fall. The binding on her left ski failed to release, and she alleges, that this caused her left leg to twist into an unnatural position and fracture her knee. Santiago also fractured her arm and injured her shoulder and back as she tried to prevent herself from falling. RSI claims that following the accident, Santiago’s skis were separated from the other rental skis and the ski bindings on the skis were torque tested to determine whether the bindings were properly set. RSI determined that the bindings were properly set for Santiago’s weight and boot size.
On January 26, 1995, Santiago filed this complaint asserting six claims alleging that RSI was negligent: in renting defective or improperly adjusted ski equipment to her (Count I); in renting ski equipment to her without obtaining her parental consent (Count II); in selling a lift ticket to her without obtaining her parental consent (Count III); for failing to properly advise her of her skill level (Count IV); in placing the snow fence in a dangerous location (Count V); and for failing to warn of a negligently placed snow fence (Count VI).
DISCUSSION
This court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). A moving party who does not bear the burden of proof at trial must affirmatively demonstrate the absence of a triable issue, and that the summary judgment record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This may be done either by submitting affirmative evidence negating an essential element of the opposing party’s case or by showing that the opposing party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving pariy establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, supra at 17.
RSI contends that it is entitled to judgment on all counts because Santiago’s claims are barred as a matter of law by the Massachusetts “Ski Safety Act,” G.L.c. 143, §§71H-71S. Specifically, RSI points to §71N(6), which provides that “ski operators shall not be liable for damages to persons or property, while skiing, which arise out of the risks inherent in the sport of skiing. G.L.c. 143, §71N(6). Further, §710 provides that ”[a] skier shall maintain control of his speed and course at all times, and shall stay clear of any snow-grooming equipment, any vehicle, towers, poles, or other equipment. In addition, “[a] skier skiing down hill shall have the duty to avoid any collision with any other skier, person or object on the hill below him, and, except as otherwise provided in this chapter . . . the responsibility for the collision with any obstruction, man-made or otherwise, shall be solely that of the skier and not that of the operator, provided that such obstruction is properly marked pursuant to the regulations promulgated by the [recreational tramway] board.” Id., §710. Finally, “[a] skier shall be presumed to know the range of his own ability to ski on any slope, trail or area. A skier shall be presumed to know of the existence of certain unavoidable risks inherent in the sport of skiing, which shall include, but not be limited to, variations in the terrain, surface *290 or subsurface snow, icy conditions or bare spots, and shall assume the risk of injury or loss caused by such inherent risks.” Id.
I. Claim based on rental of faulty equipment.
In Count I of the complaint, Santiago alleges that RSI was negligent in renting defective or improperly adjusted ski equipment to her. Santiago first argues that the statutory provisions relied on by RSI do not apply in cases where the alleged negligence does not occur on the slopes, but which, as here, occurred at the ski rental area. However, the language of the statute does not support this narrow reading. Section 7IN shields ski area operators from liability for “damages to persons or property, while skiing, which arise out of the risks inherent in the sport of skiing,” without regard to the site where the operator’s negligence is alleged to have occurred.
Next, in Atkins v. Jimmy Peak, Inc., 401 Mass. 81, 83 (1987), considering the applicability of the limitation period imposed by §71P, the Supreme Judicial Court rejected the proposition that a “ski area operator,” as defined in §71N(6), does not include its actions while acting solely in the capacity as a lessor of ski equipment. The parties do not dispute that RSI is a ski area operator and that Santiago was injured while skiing, and this argument must fail.
Santiago also argues that even as a ski area operator, RSI is not shielded from liability because her injuries were caused by the negligence of an RSI employee. Santiago relies upon the statement in Tilley v. Brodie Mountain Ski Area, 412 Mass. 1009 (1992), that “in this case, there is nothing in the statutory scheme of G.L.c. 143, §§71H-71S, that indicates a legislative intent to insulate the ski area from liability for the negligence of its agents or employees.” Id. at 1010. In Tilley, a ski patrol member employed by the ski area operator struck the plaintiff from behind on the ski slope. Under G.L.c 143, §710 the responsibility for any collision with another skier on the hill below “is solely that of the [uphill] skier . . . and not that of the operator.” In determining that the operator could be held liable for its employee’s collision with the plaintiff, the Supreme Judicial Court expressed its doubt that “the Legislature intended to alter the well established common law rule that an employer is liable for the negligence of its agents or employees.” Id. at 1010. The Court noted that §710 “embodies the Legislature’s judgment that it would be both physically impossible and economically intolerable to require ski areas to guard against and assume responsibiliiy for the negligence of their patrons. Although it cannot be expected to select and control its patrons, a ski area is able to exercise a great deal of control in the selection, training and supervision of its ski patrol members.” Id. This court concludes that Tilley offers little support to Santiago. The ski area in Tilley was held to be liable for its employee’s violation of the specific duty to avoid collisions with other skiers imposed on all skiers by §710; Santiago’s claim against RSI involves no such violation and is governed by the general shield from liability provided to ski area operators under §71N(6). See also Saldarini v. Wachusett Mountain Ski Area, Inc., No. SJC-07020 (Sup. Jud. Ct. May 16, 1996), slip op. at 3. Again, because the parties not dispute that RSI is a ski area operator and that Santiago was injured while skiing, this argument must fail.
Nonetheless, the court concludes that summary judgment must be denied as to Count I. In her affidavit submitted in opposition to RSI’s motion, Santiago avers that when she struck the fence, the binding on her left ski failed to release, and this caused her left leg to twist into an unnatural position and fracture her knee. Unlike the bare spot at issue in McHerron v. Jiminy Peak, Inc. No. SJC-07000 (Sup. Jud. Ct. May 16, 1996), slip op. at 1, or the icy conditions at issue in Saldarini v. Wachusett Mountain Ski Area, Inc., supra at 1, a defective or improperly adjusted ski binding is not listed in §710 as an example of an unavoidable risk inherent in the sport of skiing. A defective or improperly adjusted ski binding is not, as a matter of law, an inherent risk in the sport of skiing, for which RSI is shielded from liability under §71N(6). Summary judgment is inappropriate in this case, where Santiago’s injuries are alleged to have arisen out of a faulty ski binding, rather than her collision with the fence and tree, because of a material issue of fact as to whether Santiago’s ski bindings were defective or improperly adjusted.
II. Claims based on failure to obtain parental consent or to warn about skill level.
Santiago also alleges that RSI was negligent in renting ski equipment to her without obtaining parental consent (Count II), in selling a lift ticket to her without obtaining parental consent (Count III), and for failing to properly advise her of her skill level after the second lesson (Count IV). Santiago has submitted, copies of RSI policies that require employees to obtain parental consent before renting equipment to minors, and to inform students of their level of skiing after a ski instruction class. In addition, Santiago has submitted the affidavit of her mother, Anna Santiago, in which she avers that she was “unaware that Blue Hills would give her a pass to ski any of the trails unsupervised after her lesson,” and had she known, she “would not have let [her] daughter ski after her lesson was over.” Implicit in Anna Santiago’s statement is her consent to her daughter’s renting the equipment and taking the ski lesson, and Count II must fail.
Further, the court concludes that Counts III and IV are barred by §710. First, this section provides in relevant part that: “[a] skier shall be presumed to know the range of his own ability to ski on any slope, trail or area.” The court declines to read into this statute any exception to the presumption for skiers who are minors. In addition, in light of the legislative judgment *291 that “it would be both physically impossible and economically intolerable to require ski areas to guard against and assume responsibility for the negligence of their patrons,” Tilley, supra at 1010, the court concludes that the statutory presumption was intended to be conclusive. Thus, other evidence of a skier’s knowledge about “the range of his own ability to ski on any slope, trail or area” is not probative. Similarly, absent evidence that RSI violated some statute or regulation by failing to obtain parental consent, such consent is not relevant to Santiago’s duties as a skier under §710 to know the range of her own ability, to maintain control of her speed and course at all times, and to avoid any collision with objects on the hill below her.
III. Claims based on negligent placement of snow fence.
Finally, Santiago claims that RSI was negligent in placing the snow fence (Count V), and for failing to warn of a negligently placed snow fence (Count VI). Santiago has produced evidence that the snow fence was placed at the bottom of the “Trophy” trail, where she was injured, to prevent skiers from skiing into the woods if they failed to make the turn at the bottom of the trail. The fence had been placed in that location, without warning signs, for at least thirty-two years, and Santiago was not the first skier to have an accident in that area.
A ski operator is required to “maintain a sign system on all... ski trails and slopes in accordance with rules and regulations promulgated by the [recreational tramway] board and shall be responsible for the maintenance and operation of ski areas under its control in a reasonably safe condition or manner.” G,L. c. 143, §71N. These regulations require that a designated caution sign be posted “where and when necessary to adequately alert skiers of known dangers of any slope or trail at ski areas ...” At the same time, under §710, “[a] skier skiing down hill shall have the duty to avoid any collision with any other skier, person or object on the hill below him, and, except as otherwise provided in this chapter . . . the responsibility for the collision with any obstruction, man-made or otherwise, shall be solely that of the skier and not that of the operator, provided that such obstruction is properly marked pursuant to the regulations promulgated by the [recreational tramway] board.” G.L.c. 143, §710.
This court rules that the orange, webbed snow fence is itself open and obvious, and that, as a matter of law, no further signage was “necessary to adequately alert skiers” of any known dangers posed by the snow fence. Under §710, Santiago was solely responsible for her collision with the fence, and summary judgment will be granted as to Count VI of her complaint. The court further rules that no fact finder could reasonably conclude that RSI’s placement of the snow fence violated its duty under §7 IN to maintain and operate the ski area in a reasonably safe condition or manner. For this reason, summary judgment will be allowed as to Count V, as well.
ORDER
For the foregoing reasons, it is hereby ORDERED that Recreational Sports, Inc.’s motion for summary judgment is ALLOWED as Counts II, III, IV, V, and VI of the complaint; and is DENIED as to Count I of the complaint.